UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER J. BOULDREY,

           Plaintiff

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, SHAWN BREWER,
& AMADOR YBARRA,

           Defendants.

_____/

Case No. 5:18-cv-11543
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (DE 7)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 7.)

**II.**    **REPORT**

    **A.**    **The Complaint**

Christopher J. Bouldrey is employed by the State of Michigan and works at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF).  (DE 1 ¶ 1.)  The facts underlying this lawsuit stem from Plaintiff's December 20, 2015 e-mail concerning "the abuse of holiday sick time leave" and continue through his April 26, 2016 three-day suspension and subsequent appeal of the disciplinary action.  (*Id*. ¶¶ 1-12.)

On May 15, 2018, Bouldrey filed this fee-paid complaint *in pro per* against three defendants:  (1) the MDOC; (2) Shawn Brewer, former JCF Warden; and, (3) Amador Ybarra, a JCF Lieutenant.  (*Id.* ¶¶ 16-18.)  Plaintiff's sole cause of action is for a deprivation of his First Amendment rights (as incorporated under the Fourteenth Amendment) under 42 U.S.C. § 1983.  (*Id.* ¶¶ 13-14.)  Plaintiff sues Defendants in their individual and official capacities, and he seeks declaratory, compensatory, punitive, and injunctive relief, as well as an award of attorney fees and costs.  (DE 1 at 1, and ¶¶ 19-20.)[1]

## B.     Instant Motion

Judge Levy has referred this case to me for all pretrial matters.  On July 24, 2018, in lieu of filing an answer to the complaint, Defendants MDOC, Brewer and Ybarra filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 7.)  Plaintiff has filed a response seeking denial of Defendants' motion and permission to engage in "formal discovery."  (DE 9.)  Defendants have filed a reply.  (DE 11.)[2]

---

[1] Plaintiff labels his complaint as "verified."  (DE 1 at 1.)  However, his statement of verification is not signed under penalty of perjury.  (DE 1 at 8.)  *See* 28 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

[2] Defendants represent that they "attempted to directly contact Plaintiff by telephone for concurrence . . . [,]" but "did not receive a response."  (DE 7 at 2.)  *See also* E.D. Mich. LR 7.1(a) ("Seeking Concurrence in Motions and Requests.").  Plaintiff challenges this representation and provides a copy of Xfinity Connect Voice Call History for July 18, 2018, which shows that he placed a call to Lansing 30 minutes after receiving one from Lansing.  (DE 9 at 13 n.2, DE 9 at 28.)  Nonetheless, I will not base my recommendation upon Defendants' compliance, or

### C.    Fed. R. Civ. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

---

lack thereof, with E.D. Mich. LR 7.1(a). However, the Court gives fair warning to Defendants that "drive-by" compliance requests will not be tolerated.

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[3]

### D.    Discussion

###  1.    The speech in question.[4]

---

[3] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

[4] Plaintiff has attached exhibits to his response (DE 9 at 21-47), some of which are referenced in this section. However, these references do not require the Court to treat the instant motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) ("Result of Presenting Matters Outside the Pleadings."). The attachments noted in this section are either Plaintiff's email at issue in this lawsuit, the request for investigation form, the employee disciplinary report, and a communication from the Warden's Office, each of which is or seems to be referenced in Plaintiff's operative pleading. (DE 9 at 22, 24, 26, 47.) "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her

Plaintiff alleges that on or about December 20, 2015, while at home on a day off, he sent an e-mail to JCF employees via the Outlook "employee mass email distribution system," *i.e.*, MDOC-JCF LAN-GRP.  (DE 1 ¶¶ 2-3; *see also* DE 9 at 22.)  In response to the instant motion, Plaintiff attaches the email referenced in his complaint, the complete content of which reads:

> First of all, merry Christmas and happy new years to all. Unfortunately, this is the time of year at Cotton that morale is lowest. Why?  Because of how staff REALLY treat one another.  Christmas is a Christian holiday.  There is no down side to being Christian.  It is doing more for others than for yourself, treating others the way you would like to be treated, being selfless not selfish.  Last year 40 officers called in sick on Christmas day alone.  [A]nd it was no better over new years.  I spent this entire year pushing to undo this incredibly selfish "tradition" here and don't think I could have been treated more like a convict.  Supervisors cowered behind blaming the union, the union did what it always does, acts like a lousy parent and stands in front of [his/her] worst behaving children and says[, ]" you get your filthy hands off  my little angels", human resources pointed the finger at Cotton, the administration hid behind the comforting cloak of ignorance and pretended not to know this problem existed, all while around 100 staff were mandated lest [sic] year between Christmas and new years holidays.  I was lied to, spun, etc.[] for months.  Enough.  It's time to stand together, call a truce, and practice " do unto others" like we all were raised as right.  Having an enjoyable workplace is up to us, and how we treat each other.  It should be a lot

---

claim."  *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  *See also Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997) (quoting *Venture Assocs. Corp.*); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (insurance policies attached to motion to dismiss were not "matters outside the pleadings," as they were "referred to throughout the complaint[,]" and were "central to the sisters' claims[,]" and each of the causes of action "relate[d] to and ar[ose] from the two life insurance policies in question.").  Thus, as to the citations to these four exhibits, I have not taken Defendants suggestion to disregard them.  (DE 11 at 3-4.)

easier to distinguish between convicts and staff based on behavior than it is here!  We have been trained to "dehumanize" people from the time we hired in.  "Convicts are the lowest vermin[] on the planet".  And so[,] we have power over them.  Abraham Lincoln said, "If you want to see the true character of a man... give him power".  Many of us here struggle to handle this responsibility.  Treating everyone...family members ,spouses, coworkers, and neighbors like they are beneath us.  The only people that have "nothing coming" are those of us who were unlucky enough to get the holidays to  fall on our rdo's or have an annual leave spot reserved.  As we say in the military, "carry your OWN pack[.] Pull your own weight"' The difference between a man and a boy is a boy does what he WANTS to do but a man does what he NEEDS to do.  Saddly [sic] there are a lot of boys here.  If you plan on calling in sick again this holiday season forcing your coworker to stay for another 8 hours and "carry your pack" for you, come see me in E unit, I'm there everyday about 10 minutes early for 2nd shift, I have some print offs identifying sociopaths that might interest you and help you.  Otherwise, do unto others and let[']s help each other have a great holiday season with what's left of our time with family without it being "stolen" from us from the selfish staff.  Remember, do unto others means something positive, not sticking it to someone else first.  God bless you all and merry Christmas, Bouldrey.

(DE 9 at 22.)

Defendant Ybarra submitted a Request for Investigation based on this email.

(DE 9 at 24.)  Plaintiff refers to it as "protected speech[.]" (DE 1 ¶ 3.)  The

following day, Defendant Brewer, then JCF's Warden, "issued a Notice that the

Outlook email system could not be used without permission from his office."  (*Id.*

¶ 4; *see also* DE 9 at 47.)

Plaintiff claims he was charged with several work rule violations, including:

(a) Misuse of State or Other Agency Property or Equipment; (b) Conduct

Unbecoming; (c) Enforcing Rules, Regulations, Policies, Procedures, Post Orders and Work Statements; (d) Humane Treatment of Individuals; and, (e) Class I Insubordination.  (DE 1 ¶ 5.)  *See also* MDOC PD 02.03.100A ("Employee Discipline"), effective Jan. 1, 2018.  MDOC Internal Affairs and Human Resources, as well as Defendant Warden Brewer, were involved in the investigation.  (*Id*. ¶¶ 6-10; *see also* DE 9 at 26.)

Plaintiff alleges that, on March 4, 2016, an Internal Affairs Section employee sent a Memorandum to Defendant Brewer "indicating there was sufficient evidence to support the allegation(s) made concerning" the misuse of state equipment, conduct unbecoming, and enforcing rules & regulations charges. (DE 1 ¶ 7.)  Then, on or about April 26, 2016, Plaintiff "was issued a three[-]day suspension for his protected conduct."  (*Id*. ¶ 11; *see also* DE 9 at 26.)  Plaintiff appealed the disciplinary action "through all appeal steps available through the Michigan Corrections Organization Union, Local 526M."  (DE 1 ¶ 12.)

### 2. Plaintiff alleges he was suspended in retaliation for engaging in speech protected by the First Amendment.

In his sole cause of action, Plaintiff – a public employee – alleges that Defendants violated his First Amendment right against retaliation.  (DE 1 ¶ 19.) Verbatim, he alleges:

> Defendant[s] Michigan Department of Corrections, Shawn Brewer and Amador Ybarra, are subject to liability where their respective actions are the legal cause of Plaintiff's Constitutional deprivation.

7

> Plaintiff has a Constitutional Right to speak on matters of "public concern" under the First & Fourteenth Amendment.  The Defendants' adverse actions, in retaliation against Plaintiff for his protected conduct, is the direct cause of this legal action.  Defendants were acting under the color of state law.

(*Id.* ¶ 19.)  Similarly, in response to the instant motion, Plaintiff argues that his email "statements about the fraudulent sick time usage on holidays and supervisory staff cowering behind the unions and nothing being done about it, sparked retaliation from the Defendants."  (DE 9 at 11.)

"To establish a prima facie case of First Amendment retaliation under 42 U.S.C. § 1983, [Plaintiff] must demonstrate that: (1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse action."  *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004) (citing *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003) (citations omitted)).

Plaintiff has alleged adverse action (a three-day suspension) and a causal connection between the purportedly protected conduct (the email) and the issuance of the suspension.  (DE 1 ¶ 11; *see also* DE 9 at 12, 16, 26.)  Although Defendants touch upon these elements in their reply (*see* DE 11 at 6-7), they do not really challenge the second and third elements of a First Amendment retaliation claim in their motion.  Instead, Defendants' motion concentrates on the first element,

8

arguing that Plaintiff "cannot establish he was speaking as a private citizen on a matter of public concern or that he received his suspension based upon constitutionally protected activity." (DE 7 at 10.)

### 3. Plaintiff, an MDOC employee, was not engaged in constitutionally protected activity.

Plaintiff identifies himself as an 18-year MDOC employee, presently working at JCF. (DE 1 ¶ 1.) As the Supreme Court has instructed, "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983) (citing cases). "The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419. However, "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421-422.

### a. It is not clear whether Plaintiff was acting as a "private citizen" or "pursuant to his employment duties."

9

Defendants argue that Plaintiff "cannot show he was speaking as a private citizen." (DE 7 at 13.) As Defendants point out, the question of whether Plaintiff was speaking as a private citizen or "pursuant to his employment duties," is "an issue of law for the Court to decide." *Omokehinde v. Detroit Bd. of Educ.*, 563 F. Supp. 2d 717, 723-724 (E.D. Mich. 2008) (Rosen, J.) (citing *Garcetti*, 547 U.S. at 415). (DE 7 at 11-12.)

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Whether Plaintiff spoke pursuant to his official duties takes into consideration his "employment duties, the impetus for h[is] speech, the setting of h[is] speech, the speech's audience, and its general subject matter[.]" *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007).

### i.   **Employment duties**

The respondent in *Garcetti* "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case . . . ." *Garcetti*, 547 U.S. at 421. Accordingly, the Supreme Court noted that "he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case." (*Id.* at 422.) Here, by comparison, Plaintiff cites the fact that he was on "personal time at home," apparently arguing that he was acting as a

10

private citizen when he sent the email.  (DE 9 at 10-11.)  He contends that his expression "occurred solely on [his] personal time at home" and was not made pursuant to his official duties as a Corrections Officer, which are "to monitor prisoner activities."  (DE 9 at 13.)

Whether Plaintiff's email to JCF employees "was within h[is] workplace duties is a question of fact[.]"  *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 768 (6th Cir. 2010).  And, while the Court suspects that communication about abuse of sick time is not a standard responsibility of a Corrections Officer, it recognizes that "ad hoc or de facto duties can fall within the scope of an employee's official responsibilities despite not appearing in any written job description."  *Weisbarth*, 499 F.3d at 544.  Moreover,

> The proper inquiry is a practical one.  Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Garcetti*, 547 U.S. at 424–25.  To complicate matters, Defendants hedge their bets, stating that "[e]ven though Plaintiff did not have permission to send such an email, it was done . . . pursuant to his position at JCF."  (DE 7 at 14.)

Still, given that the pending motion is one for dismissal, as to which Plaintiff's allegations must be taken as true, the Court will assume *arguendo* that Plaintiff was acting outside of his "employment duties."  *Id.*

11

### ii.   The impetus and setting of his speech and the speech's audience

However, several other factors support the conclusion that Plaintiff was speaking "pursuant to his employment duties." "[T]he focus of the speech is on the *point* of the speech as opposed to the role of the speaker in saying it." *Rodgers v. Banks*, 344 F.3d 587, 599 (6th Cir. 2003) (emphasis added). *See also Connick*, 461 U.S. at 148 ("While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the *focus* of Myers' questions is not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors.") (emphasis added).

There seems to be no dispute that the email in question was sent "after work hours, and outside of the work area, at home." (DE 9 at 13.) *See also Connick*, 461 U.S. at 153 n.13 ("[e]mployee speech which transpires entirely on the employee's own time, and in non-work areas of the office, bring different factors into the *Pickering* calculus," *i.e.*, balancing the employee citizen's interest and the State employer's interest, "and might lead to a different conclusion."). However, even if Plaintiff was acting from his home and on his own time, Plaintiff alleges that he:

> . . . sent an e- mail from home to all those within the G. Robert Cotton Correctional Facility (JCF), using the *Outlook email system*, **MDOC-JCF LAN-GRP**, (*employee mass email distribution system*), regarding the abuse of holiday sick time leave being fraudulently used

12

by [JCF] Employees, and criticized supervisory staff for not reigning
in the corruption.

(DE 1 ¶ 2 (emphases added); *see also* DE 9 at 22.)  Likewise, as Plaintiff admits in

his response: "Plaintiff, from home[,] distributed the email via the MDOC-JCF-

LAN GRP system.  The email was sent to Human Resource Personnel; Union

Personnel; MDOC New Letter Personnel, and all employees similarly situated."

(DE 9 at 11.)

In other words − and ignoring for the moment how Plaintiff *obtained* the

email addresses or the *location* from which he initiated the contact with them − **the**

**transmission was made to JCF employees via their JCF email addresses,**

**apparently via the MDOC's / JCF's server**.  Thus, the setting of the speech was

at least partially JCF and the speech's audience was other JCF employees.

Moreover, although Plaintiff responds that he "actually promoted more effective

public services . . . [,]" (DE 9 at 15), as Defendant notes, "it was clearly Plaintiff's

motivation . . . [,]" *i.e.*, impetus, "to speak only to his co-workers regarding this

issue[,]" as he used "the internal group mass email distribution system to

disseminate his message to only JCF staff."  (DE 11 at 5-6.)  Unlike *Rodgers*,

where the Court construed the point of the memo's contents as "to call Defendant's

attention to what Plaintiff perceived as a disregard of patient privacy at the Lewis

Center," rather than "to complain about management or other internal disputes[,]"

and concluded that "[t]he quality of patient care in state hospitals presents an issue

13

of public concern[,]" *Rodgers*, 344 F.3d at 600-601, the focus of Plaintiff's email is on honest employees not having to work extra, rather than on saving the taxpayers money by properly staffing prisons.[5]

### iii.   Summation

On balance, the *Weisbarth* factors operate against Plaintiff, which leads to the conclusion that Plaintiff was speaking "pursuant to his employment duties." Nevertheless, for the limited purpose of this motion and as urged by Plaintiff (DE 9 at 10-13), the Court will move forward in its analysis on the assumption that Plaintiff was speaking as a private citizen rather than pursuant to his employment duties.

> ### b.   Plaintiff addressed a matter of private concern, not public concern.

---

[5] "Several . . . Sixth Circuit cases suggest that the *Rodgers* rationale would not survive *Garcetti*." *Hilden v. Hurley Medical Center*, 831 F.Supp.2d 1024, 1038 (E.D. Mich. 2011) (Lawson, J.). *See, e.g.*, *Haynes v. City of Circleville, Ohio*, 474 F.3d 357, 365 (6th Cir. 2007) (Haynes's memo to Chief Gray "reflects nothing more than 'the quintessential employee beef: management has acted incompetently.'") (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988)). Mr. Bouldrey's case is akin to *Hilden*, where "to the extent that the plaintiffs complained to their supervisors or other hospital personnel," the Court concluded that "*Garcetti* would preclude a First Amendment retaliation claim based on those communications[,]" and compared complaints to an internal body with those made to an outside regulatory body. *Hilden*, 831 F.Supp.2d at 1039. And, as in *Haynes*, "quintessential employee beef" also seems to fit the bill.

Even if Plaintiff was speaking as a private citizen when he sent the email, the subject matter of Plaintiff's email was not one of public concern, as this phrase is interpreted in First Amendment retaliation case law.  "The inquiry into whether Plaintiff's speech is entitled to protection under the First Amendment as addressing a matter of public concern is a question of law for the court to decide."  *Bonnell v. Lorenzo*, 241 F.3d 800, 809-810 (6th Cir. 2001) (external footnote omitted).  "In general, a matter of public concern is a 'matter of political, social, or other concern to the community.'"  *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (quoting *Connick,* 461 U.S. at 146).  "[W]hether the speech is made public or is communicated privately within the relevant public body is not determinative."  *Jennings v. Wayne Cty.*, No. 2:13-cv-10392-RHC-DRG, 2015 WL 5589869, at *13 (E.D. Mich. Sept. 22, 2015) (Cleland, J.).

As pleaded by Plaintiff, the speech in question is "an e-mail . . . to all those within . . . JCF[,] using the Outlook email system, . . . [an] employee mass email distribution system[,] regarding the abuse of holiday sick time leave being fraudulently used by [JCF] Employees, and criticized supervisory staff for not reigning in the corruption."  (DE 1 ¶ 2.)  From the MDOC's point of view, the communication was "an inappropriate email to all employees at JCF . . . [,]" which "belittled staff members who call in sick over the holidays[,]" and included

statements such as "[s]upervisors cowered behind blaming the union[.]"  (DE 9 at

26; *see also* DE 1 ¶¶ 6, 8, and 10.)

    In his response, Plaintiff refers to the cost of such behavior upon the

taxpayer.  For example, Plaintiff claims that he his email "addressed over . . . 100

employees fraudulently calling in sick specifically on holidays and supervisory

staff not taking any corrective action."  (DE 9 at 11.)  According to Plaintiff, what

he addressed "costs the taxpayers of Michigan hundreds of thousands of dollars

and morale within the workplace was at its lowest[,]" in support of which he cites

*Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir. 1983) ("An allegation

of corrupt and wasteful practices at a large municipal hospital, made to the city

official empowered to investigate such charges, obviously involves a matter of

public concern.").  (*Id.* at 11-12.)  Also, in Plaintiff's opinion, "the inner operations

of a State[-]run prison are matters of public concern[,]" as the MDOC "is entirely

operated on taxpayer[] money."  (*Id.* at 12.)  Plaintiff claims the "internal

problems," in this case – "fraudulent use of sick time and supervisory staff not

doing anything about it" – constitute "ineffective operations" within JCF and "are

clearly a matter of public concern."  (*Id.* at 14.)[6]

---

[6] Incidentally, Plaintiff claims that MDOC Agents subsequently conducted audits
and "State Employees were disciplined[,] and supervisory staff were directed to
monitor the use of sick time used."  (DE 9 at 14-15.)

However, *every* complaint of inefficiency within a governmental employer is, at least tangentially, a matter of public concern, since governmental operations are funded by tax dollars.  But the inquiry does not end there. Not every internal complaint by a government employee rises to the level of protected First Amendment speech.  Even if this issue *could* be a "real concern to the public[,]" (DE 7 at 14), and even if this subject matter "*goes to* the core of effective operations of state run facilities[,]" (DE 9 at 14 (emphasis added)), and even if Plaintiff "never addressed a specific person or persons by name," (DE 9 at 15), "[i]t is important . . . to distinguish matters of public concern from internal office politics.  Federal courts normally do not review personnel decisions reacting to an employee's behavior 'when a public employee speaks not as a citizen upon matters of public concern, but instead *as an employee* upon matters of only *personal interest*[.]'" *Jackson*, 168 F.3d at 909 (quoting *Connick*, 461 U.S. at 147) (emphases added).  *See also Rowland v. Mad River Local Sch. Dist., Montgomery Cty., Ohio*, 730 F.2d 444, 449 (6th Cir. 1984) ("There was absolutely no evidence of any public concern in the community or at Stebbins High with the issue of bisexuality among school personnel when she began speaking to others about her own sexual preference."); *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (finding Defendants entitled to qualified immunity on a first amendment claim where "[t]he record show[ed] that Garvie's criticisms more closely resembled an

employee's complaints regarding *his superior's actions* and *his own responsibilities* as a Department Head than a citizen's speaking out on a matter of public decisionmaking.") (emphases added).

Plaintiff's email is on the periphery of public concern.  To be sure, Plaintiff's email does remark that "[w]e have been trained to 'dehumanize' people from the time we hired in[,]" "'convicts are the lowest vermin[] on the planet[,]'" and "we have power over them."  (DE 9 at 22.)  However, taken in context, this is less of a commentary on the manner in which MDOC employees are trained to treat prisoners than it is on their work life's effect upon their treatment of "family members, spouses, coworkers, and neighbors" as if "they are beneath us."  (DE 9 at 22.)

Instead, Plaintiff's email complains as an employee rather than as a citizen. Defendants appropriately characterize the email's subject matter as involving "an internal problem" and including "very specific criticisms of Plaintiff's employer and coworkers."  (DE 7 at 14.)  "'[I]nternal personnel disputes or complaints about an employer's performance' do not touch upon a matter of public concern and therefore fall outside the scope of First Amendment-protected speech."  *Rodgers*, 344 F.3d at 596 (quoting *Brandenburg v. Housing Auth. of Irvine,* 253 F.3d 891, 898 (6th Cir. 2001)).  Rather than a commentary upon the cost of such behavior upon the taxpayers or a commentary upon how prisoners should be treated,

18

Plaintiff's email is a moralizing rant or complaint about some workers carrying the weight of others.  For example, the email refers to the union as acting "like a lousy parent[,]" suggests that it may be difficult "to distinguish between convicts and staff based on behavior[,]" refers to "selfish staff[,]" and offers "some print-offs identifying sociopaths that might interest you and help you."  (DE 9 at 22.) Plaintiff's email shows little regard for issues of public concern, like prison safety, tax dollars, etc.  As Defendants contend, "[t]here is . . . no indication from the pleadings that Plaintiff ever attempted to bring it to the public's attention or anyone outside of JCF[,]" and Plaintiff's email "is clearly part of an employment related dispute and not a civic commitment to publicly expose corruption."  (DE 7 at 14, DE 11 at 5.)  Therefore, it is not "a matter of public concern[,]" as this phrase is interpreted in First Amendment retaliation analysis.

### c.    Was Plaintiff's speech disruptive to the workplace?

Even in the event the Court were to determine that the subject of Plaintiff's email is a matter of public concern, the Court's analysis would continue. *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("[E]ven if [Plaintiff]'s speech touches upon a matter of public concern, its value still must be weighed against its impact upon the efficiency, discipline, and proper administration of the [MDOC].").  *See also*, *Springsteen v. Garrett*, 885 F. Supp. 2d 835 (E.D. Mich.

19

2012) (Duggan, J.) (regarding the balancing of the public employee's and the employer's interests).

Defendants argue that Plaintiff's speech was "sufficiently disruptive to the workplace at JCF to warrant a suspension under the test set forth in *Pickering*[.]" (DE 7 at 15; *see also* DE 11 at 6-7.)  In *Pickering*, the Supreme Court noted that "[t]he problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968); *see also Rodgers*, 344 F.3d at 596 ("a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions."). "[T]he manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  The Supreme Court has "previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388 (citing *Pickering,* 391 U.S. at 570–573).

For his own part, Plaintiff seems to advocate that "[p]ublic interest is near its zenith when ensuring that public organizations are being operated in accordance with the law and seeing that public funds are not purloined[.]"  *Marohnic*, 800 F.2d at 616 (internal citation omitted); *see also Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 618 (6th Cir. 2001) (citing *Marohnic* and discussing *Pickering* balancing).  (DE 9 at 15.)  However, in holding that "Marohnic's speech[,] which exposed graft and corruption in government[,] touched upon a matter of public concern[,]" the Sixth Circuit had observed that "Marohnic's speech was induced by civic commitment, not by an employment related dispute." *Marohnic*, 800 F.2d at 616.  Here, Plaintiff's speech was induced by an employment related dispute.  Moreover, even if Marohnic's exposure of "unscrupulous behavior in the workplace" made "his interests . . . co-extensive with those of his employer[,]" *id.*, Bouldrey's language was particularly inflammatory, abusive and exceptionally insulting.  *Compare Rodgers*, 344 F.3d at 601 (*Pickering* balancing favored plaintiff where, in part, the speech did *not* appear to be "particularly inflammatory," there was no apparent "abusive language," and the Court did not discern "any exceptionally insulting aspect of its presentation.").

Bouldrey went beyond complaining about abuse of sick time.  He compares JCF staff with "convicts," refers to the very population he serves as "the lowest vermin on the planet[,]" rails against JCF staff as "selfish," and likens them to

21

"boys" rather than "men[,]" inferring that they are "sociopaths."  He describes

supervisors as "cower[ing]" and union leaders as "a lousy parent."  (See DE 9 at

22.)  As Defendants correctly noted in the Employee Disciplinary Report,

Bouldrey's turn of phrase was, indeed, "belittling" to staff members. (DE 9 at 26.)

It is not difficult to understand why it would have "a detrimental impact on close

working relationships," or why it would "impair[] discipline by superiors or

harmony among co-workers."  *Rankin*, 483 U.S. at 388.[7]

### d.   The Court need not engage in qualified immunity analysis.

Defendants argue that they are entitled to qualified immunity as to Plaintiff's

"claims for money damages against them in their individual capacities."  (DE 7 at

17.)  "The Court applies a three-part test when determining whether a government

official is entitled to the affirmative defense of qualified immunity[:]

> The first inquiry is whether the Plaintiff has shown a violation of a
> constitutionally protected right; the second inquiry is whether that
> right was clearly established at the time such that a reasonable official
> would have understood that his behavior violated that right; and the
> third inquiry is "whether the plaintiff has alleged sufficient facts, and
> supported the allegations by sufficient evidence, to indicate that what

---

[7] In support of his claim that he did not disrupt "the work environment or the
harmony therein," Plaintiff attaches "responsive emails sent to Plaintiff from
coworkers[,]" most of which are dated December 20, 2015 and December 21,
2015.  (DE 9 at 16; DE 9 at 30-45.)  I do not consider these here, as the
communications lie far outside of the pleadings and doing so would necessitate
treatment of the instant motion as one for summary judgment under Rule 56.  *See*
Fed. R. Civ. P. 12(d).

the official allegedly did was objectively unreasonable in light of the clearly established rights."

*Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) (citing *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc*)).

Plaintiff touches upon the second inquiry, as he argues that the law was clearly established in 1994.  (DE 9 at 17.)  *See Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("Zilich's First Amendment right of free speech was "clearly established" for qualified immunity purposes.").  Plaintiff also claims that Defendants used MDOC PD 02.03.100 ("Employee Discipline") to "infringe on Plaintiff's Constitutional rights[.]"  (DE 9 at 17-18.)

However, Defendants' qualified immunity argument concentrates on the first inquiry – whether Plaintiff "has shown a violation of a constitutionally protected right[.]"  *Higgason*, 288 F.3d at 876.  (*See* DE 7 at 18-19.)  For the reasons set forth above, the Court should conclude that Plaintiff was not engaged in protected conduct, and, therefore, he has not stated a First Amendment retaliation claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  If the Court agrees with this conclusion, then it need not address the second prong (whether the related law was clearly established) or the third prong (whether Defendants' actions were objectively unreasonable) of the qualified immunity analysis.

> **4.    Had Plaintiff stated a claim upon which relief may be granted, then his official capacity claims for monetary damages would be barred by the Eleventh Amendment.**

23

Defendants argue that Defendants MDOC, Brewer and Ybarra are entitled to Eleventh Amendment immunity as to Plaintiff's official capacity claims.  (DE 7 at 8.)  Plaintiff agrees that Defendants are entitled to dismissal of the official capacity claims; however, he does so explaining that he "mistakenly thought injunctive relief could only be obtained under Defendants' Official capacity."  (DE 9 at 9.)

More accurately, Defendants are "not subject to suit for monetary damages in [their] official capacity under § 1983." *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70–71 & n.10 (1989)).  However, "state defendants can be sued in their official capacities for injunctive and declaratory relief[.]"  *Boyd v. Myers*, 173 F.3d 428 (6th Cir. 1999) (referencing *Will,* 491 U.S. at 71 n. 10).

Plaintiff having failed to state a claim upon which relief may be granted, this is an academic discussion offered to clarify that Plaintiff was not completely mistaken about his official capacity claims for injunctive relief.  In other words, had Plaintiff stated a First Amendment retaliation claim upon which relief may be granted, the Eleventh Amendment would bar his official capacity, monetary damages claims against Defendants, but it would not bar his official capacity claims for declaratory and injunctive relief.

### 5.      Conclusion

In sum, even if Plaintiff was speaking as a private citizen when he sent the

December 20, 2014 email – and that is hardly a given – the subject did not address

a matter of public concern.  As such, he has not stated a First Amendment

retaliation claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

Accordingly, the Court should **GRANT** Defendants' July 24, 2018 motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (DE 7.)

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 26, 2018                    s/*Anthony P. Patti*
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE