# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Christopher J. Bouldrey,

               Plaintiff,        Case No. 18-11543

v.                               Judith E. Levy
                               United States District Judge

Michigan Department of
Corrections, Warden Shawn       Mag. Judge Anthony P. Patti
Brewer, and Lieutenant Amador
Ybarra,

               Defendants.

_____/

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION IN PART [12] AND GRANTING DEFENDANTS' MOTION TO DISMISS [7]

Plaintiff Christopher J. Bouldrey brings a First Amendment retaliation claim against defendants Michigan Department of Corrections ("MDOC"), Warden Shawn Brewer, and Lieutenant Amador Ybarra under 42 U.S.C. § 1983. Plaintiff is a corrections officer ("CO") at the G. Robert Cotton Correctional Facility ("JCF"), an MDOC prison. He alleges that defendants violated his constitutional right to free speech when they gave him a three-day suspension for sending an email to all

JCF employees. The Magistrate Judge's report and recommendation (Dkt. 12) that defendants' motion to dismiss (Dkt. 7) be granted and the parties' objections and responses (Dkts. 13–15) are before the Court.

## I.   **Background**

The Court adopts the factual background set forth in the report and recommendation (Dkt. 12), but provides a brief summary for context. Bouldrey is a CO at JCF and employed by MDOC. (Dkt. 1 at 1–3.) On December 20, 2015, Bouldrey sent an email to the JCF listserv, "JCF-LAN-GRP":

> First of all, merry Christmas and happy new years to all. Unfortunately, this is the time of year at Cotton that morale is lowest. Why? Because of how staff REALLY treat one another. Christmas is a Christian holiday. There is no down side to being Christian.It is doing more for others than for yourself, treating others the way you would like to be treated, being selfless not selfish. Last year 40 officers called in sick on Christmas day alone. and it was no better over new years. I spent this entire year pushing to undo this incredibly selfish "tradition" here and don't think I could have been treated more like a convict. Supervisors cowered behind blaming the union, the union did what it always does, acts like a lousy parent and stands in front of it's worst behaving children and says" you get your filthy hands off my little angels", human resources pointed the finger at Cotton, the administration hid behind the comforting cloak of ignorance and pretended not to know this problem existed, all while around 100 staff were mandated lest year between Christmas and new years holidays. I was lied to, spun, etc.. for months. Enough. It's time to stand together, call a truce, and practice " do unto

others" like we all were raised as right. Having an enjoyable workplace is up to us, and how we treat each other. It should be a lot easier to distinguish between convicts and staff based on behavior than it is here! We have been trained to "dehumanize" people from the time we hired in. "Convicts are the lowest vermin[] on the planet" .And so we have power over them. Abraham Lincoln said, "If you want to see the true character of a man . . . give him power". Many of us here struggle to handle this responsibility. Treating everyone. . .family members ,spouses, coworkers, and neighbors like they are beneath us. The only people that have "nothing coming" are those of us who were unlucky enough to get the holidays to fall on our rdo's or have an annual leave spot reserved. As we say in the military, "carry your OWN pack, Pull your own weight'" The difference between a man and a boy is a boy does what he WANTS to do but a man does what he NEEDS to do. Saddly there are a lot of boys here. If you plan on calling in sick again this holiday season forcing your coworker to stay for another 8 hours and "carry your pack" for you, come see me in E unit, I'm there everyday about 10 minutes early for 2nd shift, I have some print offs identifying sociopaths that might interest you and help you. Otherwise, do unto others and lets help each other have a great holiday season with what's left of our time with family without it being "stolen" from us from the selfish staff. Remember, do unto others means something positive, not sticking it to someone else first. God bless you all and merry Christmas, Bouldrey.

(Dkt. 9 at 22 (errors in original).)[1]

In response to the email, defendant Ybarra initiated an investigation, which led to five disciplinary charges against plaintiff: "1)

---

[1] The Court may consider the original email without converting the motion into one for summary judgment because plaintiff relies on and references the email in his complaint. *Watermark Senior Living Ret. Cmtys., Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425–26 (6th Cir. 2018).

Misuse of State Equipment; 2) Conduct [U]nbecoming; 3) Enforcing Rules Regulations[,] etc.; 4) Humane Treatment; and 5) Class I Insubordination." (Dkt. 1 at 3.) Plaintiff received a three-day suspension. (*Id.* at 5.)

Plaintiff brings a First Amendment retaliation claim, alleging that defendants violated his freedom of speech by punishing him for sending the email. (*Id.* at 7.) He claims that in the email, he was speaking as a private citizen on a matter of public concern. (*Id.*) Plaintiff sues defendants in their individual and official capacities. (*Id.* at 1.)

Defendants filed a motion to dismiss. (Dkt. 7.) Plaintiff opposes the motion and requests discovery. (Dkt. 9 at 2.) The Magistrate Judge issued a report and recommendation that the Court grant defendants' motion to dismiss. (Dkt. 12). The parties filed objections (Dkts. 13, 14), and defendants responded to plaintiff's objections. (Dkt. 15.)

## II.   <u>Legal Standard</u>

A party may object to a magistrate judge's report and recommendation on dispositive motions. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1)–(2). A district judge must resolve proper objections to a report and recommendation on a dispositive motion under

a de novo standard of review. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "De novo review in these circumstances entails at least a review of the evidence that faced the magistrate judge; the Court may not act solely on the basis of a report and recommendation." *Spooner v. Jackson*, 321 F. Supp. 2d 867, 869 (E.D. Mich. 2004) (citing 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3070.2 (2d ed. 1997)).

A proper objection identifies the portion of the report and recommendation that the objecting party takes issue with and then specifies the factual or legal basis of the error. E.D. Mich. LR 72.1(d)(1); *see Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 244 (6th Cir. 2018). Objections disputing the general correctness are improper. *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006), *abrogated on other grounds by Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241 (6th Cir. 2018). Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

## III.  <u>Analysis</u>

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) (citing cases); *Connick v. Myers*, 461 U.S. 138, 143–44 (1983). To state a claim for First Amendment retaliation, a public employee "must satisfy three requirements:" He must plead that (1) he spoke as a private citizen (2) on a matter of public concern, and (3) "that his speech interest outweighs the 'interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Mayhew v. Town of Smyrna*, 856 F.3d 456, 462 (6th Cir. 2017) (citations omitted) (quoting *Evans-Marshall v. Bd. of Educ.*, 624 F.3d 332, 338 (6th Cir. 2010)). This third factor is known as the *Pickering* balancing test. *See Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).[2] Plaintiff objects to the report and recommendation's analysis of the first requirement in his second objection, and the defendants do the same in their sole objection;

---

[2] Plaintiff must also plead that he suffered an adverse action and the protected speech caused the adverse action, *id.* at 588 (citing *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003)), but these issues are not in dispute.

plaintiff's first and third objections are to the analysis of the second requirement; plaintiff's fourth and sixth objections are to the analysis of the third requirement; and plaintiff's fifth objection is to the qualified immunity analysis.

## A. Whether Plaintiff Spoke as a Private Citizen

### i. *Plaintiff's Objection No. 2*

Plaintiff argues that the Magistrate Judge erred when he considered the impetus, setting, and audience of the speech to determine that plaintiff did not speak on matter of public concern. (Dkt. 14 at 3–4.) Specifically, he contends that whether the speech was communicated privately is not determinative. (*Id.*) But the Magistrate Judge properly considered the impetus, setting, and audience of plaintiff's email to determine whether he spoke as a *private citizen*—not whether his speech was on a matter of public concern.[3] (Dkt. 12 at 14.) However, the Court

---

[3] In *Weisbarth v. Geauga Park District*, the setting, impetus, and audience of the speech was considered to determine whether the plaintiff spoke *as a private citizen*. 499 F.3d 538, 546 (6th Cir. 2007). But in *Perry v. McGinnis*, the court determined that whether the speech was communicated privately did not affect the analysis of whether the plaintiff spoke *on matter of public concern*. 209 F.3d 597, 608 (6th Cir. 2000) (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16 (1979)). These two distinct inquiries must be considered separately. *See Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) (citing cases).

departs from the report and recommendation upon de novo review and finds that plaintiff spoke as a private citizen.

An individual speaks as a public employee when the speech was "ma[de] pursuant to his . . . official responsibilities." *Garcetti*, 547 U.S. at 424. In *Lane v. Franks*, this inquiry was formulated as "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." 573 U.S. 228, 240 (2014). The Sixth Circuit further clarified, stating that the question is whether the speech was "made in furtherance of the ordinary responsibilities of employment." *Mayhew*, 856 F.3d at 464 (quoting *Boulton*, 795 F.3d at 534). This is a "practical" inquiry that encompasses "ad hoc or de facto duties," as well as formal "written job description[s]." *Fox v. Traverse City Area Pub. Schs. Bd. of Educ.*, 605 F.3d 345, 348 (6th Cir. 2010) (emphasis omitted) (citing *Weisbarth*, 499 F.3d at 544). Courts analyze "non-exhaustive" "'who, where, what, when, why, and how' considerations" to determine when speech is made in furtherance of the ordinary responsibilities of employment. *Haddad v. Gregg*, 910 F.3d 237, 246–47 (6th Cir. 2018) (quoting *Mayhew*, 856 F.3d at 464). These considerations have also been formulated as the formal "employment

duties, the speech's impetus; its setting; its audience; and its general subject matter." *Mayhew*, 856 F.3d at 646; *Weisbarth*, 499 F.3d at 546.

For example, in *Garcetti*, the speech in question arose under formal "official responsibilities" because an internal memorandum a deputy district attorney wrote recommending dismissal of a case was a key component of a district attorney's job. 547 U.S. at 422, 424. In other words, making such recommendations would have appeared in his formal job description. Relatedly, the Sixth Circuit in *Haynes v. City of Circleville*, 747 F.3d 357 (6th Cir. 2007), and *Weisbarth* considered ad hoc duties. In *Haynes*, a police officer's communication with his supervisor about his formal duties—there, a memorandum cataloguing his grievances about canine program changes—was necessarily related to his formal duties, and so he was speaking as a public employee. *See* 747 F.3d at 364–65. The police officer in *Haynes* also spoke pursuant to ad hoc duties when, upon instructions from his supervisor to send canine equipment back, he impertinently wrapped the equipment like a Christmas gift and addressed it to his supervisor. *See id*. The same was so in *Weisbarth*, where a park ranger spoke about "morale and performance issues" with a consultant that her department had hired to

make a recommendation. *See* 499 F.3d at 544. Ad hoc duties may therefore flow from professional requirements or work-related impetuses.

Plaintiff successfully pleads that he spoke as a private citizen because there is no indication the email was sent in furtherance of his duties—formal, de facto, or ad hoc. It is impossible to infer from the complaint that plaintiff had any duties other than the usual duties of a CO. Presumably, his duties were to address the inmates' well-being and safety and security at JCF.[4] Unlike *Garcetti*, plaintiff's email addressing the abuse of sick time is not a formal responsibility that would be in his written job description. There is also nothing in the complaint that suggests he had unofficial administrative or human resources duties such that they were de facto professional responsibilities.

The email also is not related to furthering plaintiff's ordinary employment responsibilities or in response to a work-related impetus such that he had an ad hoc duty to send the email. Unlike *Haynes*,

---

[4] It appears that the report and recommendation may not have construed the complaint in the light most favorable to plaintiff, including drawing all reasonable inferences in favor of plaintiff, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), when it stated: "[W]hile the Court suspects that communications about abuse of sick time is not a standard responsibility of a Corrections Officer, it recognizes that ad hoc or de facto duties can fall within the scope of an employee's official responsibilities." (Dkt. 12 at 11 (quotations omitted).) Such an inference is in favor of defendants and cannot be drawn at this stage of the litigation.

plaintiff was not communicating about his formal duties as a CO. Nor was he was responding to a supervisor's command or a departmental action as in *Haynes* and *Weisbarth*, even though his email is similar in tone to the *Haynes*' plaintiff's giftwrap incident; it is crucial that there was no professional impetus for plaintiff's speech. According to defendants, plaintiff was not permitted to use the listserv and so it is difficult to see how plaintiff's email could have been in furtherance of his ordinary duties. Moreover, the email was about Christmas, Christianity, complaints about the union, and various gripes and grievances with plaintiff's coworkers that could not have been related to furthering any official or unofficial job duty of a CO. Presumably, all employees have an ad hoc duty to respect JCF policies, such as the sick leave policy, but the email was not about plaintiff's own compliance with the policy. Rather, it was a mass email about global compliance with the policy. Plaintiff had no formal, de facto, or ad hoc duty to send this email, and so the email was not in furtherance of his ordinary security and safety duties.

The appropriate formulation of the *Garcetti-Lane* inquiry is: whether "speech that an employee made [is] in furtherance of the

ordinary responsibilities of his employment."[5] *Boulton*, 795 F.3d at 534. The Magistrate Judge did not consider whether the speech was made in furtherance of plaintiff's employment responsibilities. Where a plaintiff has already plausibly pleaded that the speech was not in furtherance of his ordinary employment responsibilities, it is unnecessary to consider the other *Weisbarth* factors, such as the subject matter, setting, and audience of the speech in question. *Cf. Lane*, 573 U.S. at 240 (holding that a plaintiff does not speak as a public employee merely because he learned of the subject matter of his speech "by virtue of his public employment); *Boulton*, 795 F.3d at 533 (stating that the fact that the employee could not have made the speech but for his public employment is insufficient to demonstrate a plaintiff spoke as a public employee). For these reasons, the objection is sustained, and the report and recommendation is not adopted to the extent it finds that plaintiff spoke as a public employee.

---

[5] Specifically, *Boulton* recognized that *Lane* narrowed *Garcetti*, holding that *Garcetti's* language that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe" an employee's First Amendment right must "be read narrowly as *speech that an employee made in furtherance of the ordinary responsibilities of his employment*." *Id.* at 532, 534 (emphasis added)).

### ii. *Defendant's Objection No. 1*

Defendants object to preserve their right to appeal the Magistrate Judge's "assumption that Plaintiff was speaking as a private citizen." (Dkt. 13.) This objection is improper because it does not specifically identify an error the Magistrate Judge made. The objection is overruled.

## B. Whether Plaintiff Spoke on a Matter of Public Concern

### i. *Plaintiff's Objection No. 3*

Plaintiff asserts that the Magistrate Judge did not consider plaintiff's email as "mixed speech" when he evaluated whether plaintiff spoke on a matter of public concern. To determine whether speech is on a matter of public concern, courts examine "the point or focus of the speech" and "whether the point 'relat[es] to any matter of political, social, or other concern to the community.'" *Gillis v. Miller*, 845 F.3d 677, 689 (6th Cir. 2017) (quoting *Rodgers v. Banks*, 344 F.3d 587, 600 (6th Cir. 2003) (alterations in original)); *Chappel v. Montgomery Cty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 576 (6th Cir. 1997). Speech that is "incidentally . . . conveyed" or a "passing reference" to a matter of public concern is insufficient. *Id.* at 686, 689 (citations omitted). Internal activities of a public employer may address matters of public concern, *Perry*, 209 F.3d

at 609 (holding an internal grievance about racial discrimination addressed a matter of public concern), as can the management of public organizations and public monies, *Chappel*, 131 F.3d at 578–79 (holding that an employee's criticisms of board management, including the misappropriation of funds, was a matter of public concern); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) (holding a speech that "concerned fraudulent billing by the Board" was a matter of public concern). To succeed under a mixed speech theory, only some of the speech must touch on a matter of public concern. *See Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001). To determine whether some of the speech touches on a matter of public concern, courts focus on the content of the speech. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 716 (6th Cir. 2001) ("[W]e generally look to what was said, rather than why it was said.")

The subject matter of plaintiff's email is personal grumbling that raises the distant inference that JCF employees abusing leave polices could lead to a management and fiscal problem for MDOC, a public organization that is run with public monies. But the focus of the email is clear from its content: to criticize his coworkers for inconsiderately taking

sick leave around the holidays at plaintiff's expense and to complain that the administration and the union failed to intervene. Nowhere does he mention the fraudulent or wasteful use of public monies or the irresponsible management of JCF or MDOC as public organizations due to the lackadaisical use of sick leave. In *Perry*, *Chappel*, and *Marohnic*, the focus of the speech was about management of public funds and organizations. Plaintiff's email does not mention public funds or the mismanagement of JCF or MDOC as public organizations. Not even part of his email addresses a matter of public concern.

Plaintiff recharacterizes his email in his complaint and his objections to bring his email within the gamut of First Amendment protection. But in his complaint, plaintiff only offers bare legal conclusions that there was "fraud" and "corruption" at JCF related to the use of sick time. (Dkt. 1 at 2.) In his objection, plaintiff argues that the Magistrate Judge erred when he did not consider that forty employees called in sick on Christmas day and "the 100's of sick time usage demonstrating a misuse of public funds and fraud." (Dkt. 14 at 4–5.) However, the Court may only consider the factual allegations in plaintiff's complaint and documents his complaint relies on at this stage

of the litigation. Neither the complaint nor the email reference the statistics that plaintiff cites to in his response. Therefore, the Court cannot consider them. For these reasons, plaintiff's objection is overruled.

### ii. *Plaintiff's Objection No. 1*

Plaintiff argues that the Magistrate Judge did not properly analyze whether he spoke on a matter of public concern because he did not permit fact discovery under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 14 at 2–3.) Rule 12(b)(6) requires the Court to assume that all of plaintiff's well-pleaded facts are true, *Keys,* 684 F.3d at 608, and then apply the law to determine if plaintiff has stated a plausible claim for which relief can be granted based on those facts, *see Ashcroft v. Iqbal*, 556 U.S. 662, 680–84 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564–70 (2007). A complaint with deficient factual allegations will "not unlock the doors of discovery for plaintiff" at the pleading stage. *Iqbal*, 556 U.S. at 678–79. In other words, plaintiff is not entitled to fact discovery on whether he spoke on a matter of public concern simply because he filed a complaint. He must make factual allegations in his complaint that would satisfy the elements of a First Amendment retaliation claim if they were proven true.

Plaintiff offers *Rookard v. Health and Hospitals Corp.*, 710 F.2d 41 (2d Cir. 1983), *Perry*, and *Weisbuch v. County of Los* Angeles, 119 F.3d 778 (9th Cir. 1997), in support of his argument that he is entitled to discovery, but these cases are distinguishable. *Rookard* addresses discovery in the context of a bench trial, 710 F.2d at 43; and *Perry* and *Weisbuch* address the necessity of discovery in some cases on a motion to dismiss for the third requirement of a First Amendment retaliation claim, the *Pickering* balancing test, *Perry*, 209 F.3d at 607 ("In many cases, due to inadequate factual development, the [*Pickering*] balancing test 'cannot be performed on a 12(b)(6) motion.'" (quoting *Weisbuch*, 119 F.3d at 783)). Plaintiff's case is not at the trial stage, nor does he object to the lack of fact discovery for the *Pickering* balancing test. Plaintiff fails to state a claim for First Amendment retaliation because his email is not on a matter of public concern, and no amount of discovery will change the content of the original email. The objection is overruled.

### C. *Pickering* Balancing Test

#### i. Plaintiff's Objection No. 4

Plaintiff disagrees with the Magistrate Judge's balancing of the *Pickering* factors, particularly the characterization of plaintiff's email's

language when the Magistrate Judge considered the state's interest. (Dkt. 14 at 5.) This objection is improper because plaintiff does not identify an error by the Magistrate Judge; he simply disagrees with the Magistrate Judge's conclusion. It is also moot because plaintiff did not speak on a matter of public concern, even considering his mixed speech argument. Therefore, the Court cannot reach the *Pickering* balancing test because plaintiff has no interest to weigh since his First Amendment rights were not violated by defendants. *See Mayhew*, 856 F.3d at 462. The objection is denied.

### ii. Plaintiff's Objection No. 6

Plaintiff asserts that the Magistrate Judge did not consider the fact that plaintiff was at home when he sent the email. The Magistrate Judge did consider plaintiff's allegation that he sent the email from home when the Magistrate Judge examined whether plaintiff spoke as a private citizen or a public employee. (Dkt. 12 at 10–13.) However, plaintiff seems to object to the Magistrate Judge's application of the *Pickering* balancing test. He cites *Connick* for the proposition that his location when he sent the email could impact the *Pickering* analysis. (Dkt. 14 at 8 (citing *Connick*, 461 U.S. at 153 n.13).) As stated previously, this objection is

moot because defendants did not violate plaintiff's First Amendment rights, and so the Court cannot reach the *Pickering* balancing test.

To support his argument, plaintiff cites law holding that speech does not need to be communicated publicly to be a matter of public concern and that the key inquiry is the focus of the speech. *E.g.*, *Jennings v. Wayne Cty.*, No. 12-10392, 2015 U.S. Dist. LEXIS 126906, at *40 (E.D. Mich. Sept. 22, 2015) (considering *Perry*, *Chappel*, and *Givhan*). The Court's de novo review is consistent with these cases, and plaintiff's reliance upon them in the context of the *Pickering* balancing test is misplaced. The objection is overruled.

### D. Plaintiff's Objection No. 5

Plaintiff argues that it was improper for the Magistrate Judge not to engage in a qualified immunity analysis, and that the Magistrate Judge did not consider plaintiff's claims against defendants in their personal capacities. First, based on the Court's conclusion that plaintiff did not speak on a matter of public concern, there has been no constitutional violation. Therefore, the question of qualified immunity is moot. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).

Second, the report and recommendation, as well as the Court's de novo review here, addresses plaintiff's claims in their individual capacity. Because plaintiff is correct that sovereign immunity only applies to the state and state officials sued in their official capacity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 & n.10 (1989), there were no other claims left to consider except the claims against the individuals. The report and recommendation considers sovereign immunity after analyzing the First Amendment retaliation claim on the merits, but the analysis of a § 1983 claim against individual defendants in their personal capacities is the same, regardless of the capacity they are sued in. For these reasons, the objection is overruled.

IV.   **Conclusion**

Accordingly, the report and recommendation (Dkt. 12) is **ADOPTED IN PART** as to all recommendations except that plaintiff spoke as a public employee, and defendants' motion to dismiss (Dkt. 7) is **GRANTED**.

IT IS SO ORDERED.

Dated: February 20, 2019            s/Judith E. Levy
Ann Arbor, Michigan                 JUDITH E. LEVY
                                    United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 20, 2019.

s/Karri Sandusky on behalf of
SHAWNA BURNS
Case Manager